**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-20864-CIV-DAMIAN**

**SERGIO MONTELIER CHAVIANO**, *et al.*,

Petitioners,

v.

**MIAMI ICE FIELD OFFICE DIRECTOR**,

Respondent.

_______________________________________/

**ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS***

**THIS CAUSE** is before the Court on Petitioners, Sergio Montelier Chaviano ("Chaviano") and Mario Rodriguez Izquierdo's[1] ("Izquierdo" and with Chaviano, "Petitioners"), Petition For Writ of *Habeas Corpus* Under 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"), filed February 10, 2026. Respondent filed a Response to this Court's Order to Show Cause [ECF No. 4] on February 20, 2026 [ECF No. 5 ("Response")], and Petitioners filed a Reply/Traverse on February 25, 2026 [ECF No. 6 ("Reply")].

THE COURT has reviewed the Petition, the parties' briefing, the relevant legal authorities, and the pertinent portions of the record and is otherwise fully advised.

## I. BACKGROUND

The background relevant to Chaviano's immigration status and proceedings before the Immigration Court is set forth in the parties' submissions. *See generally* Pet., Resp. This Court also adjudicated a previous habeas petition filed by Chaviano, which also sets forth his

[1] During the pendency of this action, it appears that Petitioner Izquierdo was released from Respondent's custody, mooting his claims. The parties filed a Joint Motion to Dismiss Party, Mario Rodriguez Izquierdo, on August 6, 2026 [ECF No. 11] ("Joint Motion to Dismiss"). Because Izquierdo's claims are moot, only those asserted by Chaviano are analyzed here.

background. *See Chaviano v. Bondi*, No. 25-22451-CIV, 2025 WL 1744349 (S.D. Fla. June 23, 2025) (Damian, J.).

Chaviano is a Cuban national who entered the United States near Eagle Pass, Texas, without inspection on or about February 7, 2022. [ECF No. 5-15]. He was encountered by Customs and Border Patrol ("CBP") agents within several days of entry and was issued a Notice to Appear ("NTA") that commenced removal proceedings against him under Section 240 of the Immigration and Nationality Act ("INA"). *Id*. Chaviano claimed fear of return to Cuba and was released on his own recognizance on February 23, 2022. [ECF No. 5-16]. Over the next three years, Chaviano complied with his terms of release and committed no criminal offenses.

On May 22, 2025, the Department of Homeland Security ("DHS") made an *ore tenus* motion to dismiss Chaviano's Section 240 proceedings, which the immigration judge granted, and that same day DHS detained Chaviano and issued him a Notice and Order of Expedited Removal. *See* ECF Nos. 5-17, 5-20. After he was in detention, on May 31, 2025, Chaviano filed a habeas petition claiming that he was being detained under incorrect statutory authority. *Chaviano*, 2025 WL 1744349, at *1. In an Order dated June 23, 2026, this Court held that the jurisdiction-stripping provisions of 8 U.S.C. §§ 1252(a) and (e)(2) precluded a review of his detention arising from the expedited removal order, that the Suspension Clause was not violated through operation of § 1252 at that point, and that Chaviano had not been detained for long enough to raise a due process claim based on the length of his detention. *Id. at* *3-8.

On November 14, 2025, in connection with his then-pending asylum application, an immigration judge determined that Chaviano had a credible fear of harm if he was removed to Cuba. [ECF No. 5-25]. On that same date, DHS served another NTA on Chaviano,

referencing removal proceedings under Section 240 of the INA and stating that he is "an alien present in the United States who has not been admitted or paroled." [ECF No. 5-26].

On February 14, 2026, an immigration judge granted DHS's motion to pretermit Chaviano's asylum application and ordered Chaviano's removal to Ecuador pursuant to the Asylum Cooperative Agreement, which bars his applications for forms of protection such as asylum, statutory withholding of removal, and protection under the Convention Against Torture. [ECF No. 5-28]. Chaviano filed an appeal from that decision with the Board of Immigration Appeals ("BIA") on February 18, 2026. [ECF No. 5-29]. As of the date of this Order, the appeal remains pending, and Chaviano has been detained at Broward Transitional Center for approximately 15 months.

Under the INA, an order of removal does not become administratively final until "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order." 8 U.S.C. § 1101(a)(47)(B). Accordingly, where, as here, an appeal to the BIA is pending, the removal order is not yet final. Because the removal order is not administratively final, the "removal period" under 8 U.S.C. § 1231 has not yet begun. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (providing that the removal period begins on "the date the order of removal becomes administratively final"). Respondent does not argue that the removal order is administratively final. Chaviano's detention therefore remains governed by the framework controlling the period before a final order of removal, and his challenge to the statutory basis for that detention remains ripe for review.

On February 10, 2026, before entry of the above-discussed order of removal, Chaviano filed the instant habeas Petition, challenging his continued detention under 8 U.S.C. § 1225(b)

and arguing that that he was erroneously subjected to expedited removal and the expedited removal detention framework. Chaviano argues, generally, that he is entitled to a bond determination hearing and that 8 U.S.C. § 1226(a) applies to individuals in his circumstances, that is, aliens in the United States who were not lawfully admitted, rather than § 1225, which applies to aliens seeking admission to the United States. *See generally* Pet.

In Response, Respondent argues that Chaviano is an alien detainee subject to an order of expedited removal whose detention is governed by the provisions of § 1225(b)(1) and that he is subject to mandatory detention based on the plain language of the statute. Respondent further contends that this Court does not have jurisdiction to review the expedited removal order under the INA's expedited removal jurisdiction-stripping provision. *See generally* Resp. Respondent takes the position that DHS can change the statutory authority through which it detains aliens between mandatory detention and discretionary parole/bond throughout the pendency of the proceeding so long as DHS could have, when the alien first crossed the border, held the alien in mandatory detention. *See* Resp. at 8.[2] In the Reply, Petitioner cites authority from courts in the Middle District of Florida in which those courts found DHS's attempts to initiate expedited removal years after an alien was released on his own recognizance were time-barred. *See generally* Reply.

---

[2] Specifically, Respondent avers: "The governing regulations do not limit DHS's authority to choose between expedited removal and removal proceedings to the time of the initial encounter but rather authorize DHS to initiate expedited removal at any time as long as an alien fits within specified criteria. Here, although Respondents [*sic*] were previously placed in removal proceedings under § 1229a, the Department of Homeland Security elected to seek dismissal of those removal proceedings and place each Petitioner in expedited removal proceedings pursuant to 8 U.S.C.§ 1225(b)(1) instead." Resp. at 8 (internal citation omitted).

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. See 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Since this Court denied Chaviano's previous petition, there have been material and relevant developments in the law affecting immigration detainees. On May 6, 2026, the Eleventh Circuit issued its opinion in *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, holding that "[t]he text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." 175 F.4th 1258, 1262 (11th Cir. 2026).

However, the issue in *Hernandez Alvarez* involved immigration authorities misapplying Section 1225(b)(2)'s detention authority (*i.e.*, mandatory detention for "applicants for admission") against aliens who are actually subject to Section 1226(a). Here, Chaviano alleges that immigration authorities misapplied Section 1225(b)(1) (*i.e.*, mandatory detention for those subject to expedited removal), and he claims that he is instead subject to Section 1226(a).

Before addressing the merits of Chaviano's Petition, this Court must confirm that it has jurisdiction under Section 1252.

***A. Jurisdiction-Stripping Provisions Of The INA.***

As Respondent correctly notes, Section 1252(a)(2) strips this Court of jurisdiction to review orders of expedited removal:

> Section 1252(a)(2)(A)(i) and (iii) state in pertinent part: "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) [i.e., an order of expedited removal]," or "the application of [§ 1225(b)(1)] to individual aliens, including the [credible-fear] determination made under section 1225(b)(1)(B)," except as provided in section 1252(e).

Resp. at 9 (citing 8 U.S.C. §§ 1252(a)(2)(A)(i), (iii)). Chaviano does not directly address Section 1252(a)(2). Rather, he relies on authority that refers to Section 1252(g), which is the general jurisdiction-stripping provision, as opposed to the specific provision relating to the operation of an order of expedited removal. Upon a careful review of Chaviano's claims and the status of his immigration proceedings, the undersigned agrees with Respondent that this Court does not have jurisdiction to review the Petition.

The crux of Chaviano's argument is that the immigration authorities are improperly applying the mandatory detention provisions of the expedited removal statute against him and that he is entitled to a bond hearing. Thus, Chaviano's Petition falls squarely within Section 1252(a)(2)(A), as it "relates to" "the application of" the expedited removal statute, and, therefore, this Court does not have jurisdiction over the Petition. *See Alfonso v. Current Warden, Miramar ICE Field Office*, 831 F. Supp. 3d 1251, 1256 (S.D. Fla. 2026) (Singhal, J.)

("[Section 1252(a)(2)(A)] insulates from review even the Attorney General's *errant* invocation and application of expedited removal procedures[.]" (emphasis in original)).

Nonetheless, Chaviano's Petition is not futile.

***B. Suspension Clause.***

The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. Applying the Suspension Clause, the Supreme Court has held that when Congress strips habeas jurisdiction, it must provide "an adequate substitute." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Whatever the adequate substitute is, it must "entitle[ ] the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001)). Moreover, a "habeas court must have the power to order the conditional release of an individual unlawfully detained." *Id.*

The circumstances presented here appear to contravene the Supreme Court's mandate in *Boumediene*. That is, Section 1252(a)(2)(A), as applied to Chaviano, strips habeas jurisdiction and (with exceptions not relevant here) provides no substitute. *See* 8 U.S.C. § 1252(e). By its plain terms, Section 1225(b)(1) provides for expedited removal "without further hearing or review." § 1225(b)(1)(A)(i). Respondent offers no authority indicating that Section 1252(a)(2)(A) should not be read to strip detainees' habeas rights without providing an adequate alternative. And that is plainly what is happening here. Application of Section 1252(a)(2)(A) strips Chaviano of habeas rights without providing an adequate alternative. That being the case, the applications of Section 1225(b)(1) and 1252(A)(2)(A) to strip

Chaviano's habeas rights without an adequate alternative to review the legality of his detention violates the Suspension Clause and, therefore, does not (and cannot) bar this Court's exercise of habeas jurisdiction. *See Alfonso*, 2026 WL 1083330, at *4 (holding that Suspension Clause revived jurisdiction because Section 1252(a)(2)(A)'s jurisdiction-stripping provision would be unconstitutional as-applied to the petitioner who has no adequate alternative to review the legality of his detention); *see also De La Rosa v. Warden of Fla. Soft Side South Det. Ctr.*, No. 26-cv-504-SPC-NPM, 2026 WL 685621, at *3 (M.D. Fla. Mar. 11, 2026) (holding, with a similarly-situated petitioner under expedited removal, that "even if § 1252(a)(2)(A) does cover [the petitioner's] challenge to the legality of his detention, the Court retains a degree of jurisdiction under the Suspension Clause of the Constitution.").

Therefore, despite the jurisdiction-stripping effect of Section 1252(a)(2)(A), this Court retains jurisdiction to review Chaviano's Petition.

***C. The Merits Of The Petition.***

Thus, this Court considers the merits of Chaviano's Petition. There are two related yet distinct legal issues that impact the question of whether Chaviano is currently detained under the proper statutory authority: (1) whether DHS can detain an alien in the interior of the United States under a new expedited removal order years after placing the alien in full removal proceedings and releasing said alien on parole; and (2) whether, when DHS files a new NTA following a positive credible fear determination, that new NTA supersedes all prior charging documents (*i.e.*, the order of expedited removal).

This Court has considered both issues and, as discussed below, both lead to the same conclusion: DHS does not presently have the authority to detain Chaviano without affording him an individualized bond hearing under Section 1226(a).

1. Whether There Is A Legal Basis To Detain Chaviano Without A Bond Hearing

With respect to the first issue, Chaviano was not subject to expedited removal under Section 1225(b)(1). A plain reading of Section 1225(b)(1)(A) reflects that it applies to any alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States" for a two-year period prior to detention. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Here, there is no dispute that Chaviano was initially paroled into the United States after he originally entered the United States without authorization in 2022. [ECF No. 5-16]. Nor is there any dispute that he had been physically present for more than two years prior to detention. Therefore, applying the unambiguous terms of the statute to the undisputed facts here, *neither* requirement for expedited removal under Section 1225(b)(1) exists here, and, as such, it does not appear that DHS had legitimate grounds to detain Chaviano under this statute.

Because, for the reasons stated above, Chaviano does not qualify for expedited removal under the statute, Section 1225(b)(1) does not provide a legal basis to hold him in immigration custody, and Respondents have not offered any alternate basis for holding him. Therefore, on this record, it does appear that Chaviano is being held in custody without a legal basis for doing so. Absent authority to the contrary, Chaviano's detention is unlawful. *See Alfonso*, 2026 WL 1083330, at *5-6 (ordering the immediate release of the petitioner after finding that he did not qualify for expedited removal because he had both been paroled (released on recognizance) and was present in the U.S. for more than two years when detained); *Garcia v. Mullin*, No. 26-cv-22557, 2026 WL 1179364 at *2 (S.D. Fla. Apr. 30, 2026) (Gayles, J.) (ordering bond hearing after petitioner's removal proceedings were dismissed and

he was immediately arrested and placed in expedited removal proceedings); *De La Rosa*, 2026 WL 685621 at *5 (ordering release of petitioner within 24 hours upon finding that his removal proceedings were terminated and he was erroneously placed in expedited removal proceedings despite not qualifying for expedited removal under the statute).

2. Whether The New NTA Superseded Prior Charging Documents.

This Court has also considered the parties' arguments concerning whether DHS's original charging document governs Chaviano's removal status. Chaviano avers that even if he was originally properly detained under expedited removal authority, the November 14 NTA commencing full Section 240 proceedings superseded the earlier order of expedited removal and thus moved him out of mandatory detention for expedited removal.

Neither the Eleventh Circuit nor the Supreme Court has addressed this particular issue, but other courts in this District have addressed such circumstances and concluded that DHS's detention authority is based on the then-operative charging document, the superseding NTA, and not the prior order of expedited removal. *See Piloto-Rodriguez v. Warden Broward Trans. Ctr.*, No. 26-cv-60901, 2026 WL 1434335 (S.D. Fla. May 6, 2026) (Augustin-Birch, M.J.) (recommending bond hearing after DHS filed superseding NTA after credible fear screening because "DHS vacated Petitioner's expedited removal order and subsequently issued a Notice to Appear for Petitioner, charging him as 'an alien present in the United States who has not been admitted or paroled' and placing him into standard removal proceedings under 8 U.S.C. § 1229a"), *report and recommendation adopted* 2026 WL 1432456 (S.D. Fla. May 21, 2026) (Middlebrooks, J.); *Ceballo v. Parra*, No. 25-cv-25271, 2025 WL 3481908, at *4 (S.D. Fla. Dec. 4, 2025) (Becerra, J.) (ordering a bond hearing after finding that current detention is governed by current NTA commencing Section 240 proceedings, not by the initial order of

expedited removal from years before); *see also Gonzalez Carmona v. Ripa*, No. 25-cv-1128-SPC-DNF, 2025 WL 3649577 (M.D. Fla. Dec. 17, 2025) (applying expedited removal detention analysis to the petitioner's habeas claim where the initial NTA that put the petitioner in section 240 removal proceedings was superseded by later order of expedited removal).

This Court agrees with these courts, and, therefore, as applied here, Chaviano's removal status is governed by the superseding NTA, and he is not subject to expedited removal.

In sum, Respondents have not shown any basis for detaining Chaviano under the mandatory detention provision of the expedited removal statute on the record before this Court. The question, then, is what should happen now. In light of the November 14 NTA, which designates Chaviano "an alien present in the United States who has not been admitted or paroled," and *not* as an "arriving alien," and references "removal proceedings under section 240 of the Immigration and Nationality Act" (which is section 1229a of the U.S. Code, which governs standard removal proceedings), this Court finds that Chaviano is subject to the provisions of Section 1226(a), which requires that he be afforded a bond hearing at the outset of detention. *See Trujillo Suarez v. Warden*, No. 26-26107-CIV, 2026 WL 2838304, at *2 (S.D. Fla. Sept. 22, 2026) (Martinez, J.) (concluding that NTA classifying petitioner as present without being admitted or paroled subjected the petitioner to section 1226(a), not 1225(b)); *Piloto-Rodriguez v. Warden Broward Trans. Ctr.*, No. 26-cv-60901, 2026 WL 1434335 (S.D. Fla. May 6, 2026) (Augustin-Birch, M.J.) (recommending that given classification as "an alien present in the United States who has not been admitted or paroled," petitioner was detained pursuant to section 1226), report and recommendation adopted 2026 WL 1432456 (S.D. Fla. May 21, 2026) (Middlebrooks, J.); *Amador-Villalobos v. Warden*, No. 26-2233-MMH-LLL,

2026 WL 2718428 (M.D. Fla. Sept. 15, 2026) (determining that NTA that designated petitioner as present and "who has not been admitted or paroled" signified proceedings under section 1226(a)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

This Court finds that this interpretation comports with the Eleventh Circuit's holding in *Hernandez Alvarez*. *See* 175 F.4th at 1262 (concluding "that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here"); *id.* at 1276 ("The INA's text confirms that the two relevant sections on detention govern distinct classes of aliens: § 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior.").

The November 14 NTA confirms that Respondents' authority to detain Petitioner is derived from section 1226(a), and Petitioner is long overdue a bond hearing.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Joint Motion to Dismiss **[ECF No. 11]** is **GRANTED**. The claims of Mario Rodriguez Izquierdo are **DISMISSED AS MOOT**. It is further

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **GRANTED IN PART** to the extent that Petitioner Chaviano requests that this Court direct the Immigration Court to afford him a bond hearing. It is further

**ORDERED** that Respondent shall **FORTHWITH** afford Chaviano an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. The bond hearing must take place no later than **October 11, 2026**. It is further

**ORDERED** that on or before **October 23, 2026**, Petitioner Chaviano shall file a Joint Status Report informing this Court of whether he was given a bond hearing, and if so, the outcome of the bond hearing and the status of matters relevant to the Petition. Counsel for the Petitioner shall confer with counsel for the Respondent prior to filing the Status Report and must include a certification therein that the Respondent does not object to the representations made regarding the status of this case. It is further

**ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case for *administrative and statistical purposes only* pending compliance with the instant Order and until further Order of this Court.

This Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 5th day of October, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**